CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 11, 2026
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **YVETTE C. BRANDON,**<br>**Plaintiff,**<br><br>**v.**<br><br>**DOUG COLLINS,**<br>**Secretary, Department of Veterans Affairs, et al.,**<br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 7:25-cv-00094**<br><br><br><br>**By: Michael F. Urbanski**<br>**Senior United States District Judge** |

# MEMORANDUM OPINION

This matter is before the court on a second motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) filed by defendant Doug Collins as Secretary of the Department of Veterans Affairs (the "Agency"). ECF No. 19. In her amended complaint, plaintiff Yvette Brandon alleges disability discrimination and retaliation under Section 501 of the Rehabilitation Act. ECF No. 18. ("Am. Compl."). She alleges that she was retaliated against engaging in Equal Employment Opportunity activities when her earnings statement in December 2022 erroneously reflected 80 hours of pay, disrupting her disability retirement. She also alleges that she was subjected to a hostile work environment. Collins argues that the amended complaint fails state a claim.

For the reasons that follow, the court **GRANTS** the motion to dismiss.

## FACTUAL BACKGROUND

The following alleged facts are gleaned from Brandon's amended complaint.

Yvette Brandon worked for the Office of Community Care ("OCC") at the Department of Veterans Affairs Medical Center in Salem, Virginia since February 2013. Am.

Compl. at 3. She alleges that she was a "federal disabled employee under the Special Hiring Authority (Schedule A), Section 501 of the Rehabilitation Act of 1973." Id. Brandon suffers from a number of service-connected chronic medical conditions, including but not limited to: Lupus Erythematosus, Nephrotic Syndrome, Peripheral Neuropathy, Graves' Disease, Pulmonary Emphysema, Asthma, Postoperative Hypothyroidism, Hypertension, Mixed Hyperlipidemia, Left knee Anthritis, Anxiety and Depression. Id. at 3-4; ECF No. 18-1. As a result of these conditions, she alleges she "has suffered adverse retaliatory actions, harassment and disability discrimination," which included the denial of reasonable accommodations at the OCC, including her use of family and medical leave (FMLA), Leave Without Pay (LWOP), and telework. Am. Compl. at 4.

Brandon's amended complaint alleges a decade of conflicts with the Agency over her use of leave.

In 2013, Brandon filed a complaint against the Agency because "the agency would mark the Plaintiff AWOL if she used more than 16 FMLA hours of LWOP (Leave Without Pay) a month leaving her exhausted annual or sick leave." Id. She alleges that she was retaliated against for lodging this complaint when the Agency rescinded any annual or sick leave that Brandon used between March 9, 2013 and September 21, 2013. Id.

In 2014, the Agency "refused to allow Plaintiff to Telework when requested," but this policy changed when the Agency was reorganized. Id. at 5. Brandon filed an EEOC complaint about being denied the opportunity to telework as a reasonable accommodation. Id.

In July 2018, Brandon "suffered severe medical setbacks" and was hospitalized for three days. She was medically excused from work for several weeks thereafter. Id. When she

was discharged from the hospital, she had attempted to hand-deliver her "medical signed documents of excuse from work," which the Agency "refused to accept." Id. The Agency then placed Brandon on a 14-day suspension without pay. Id. During the suspension, Brandon sought to be reassigned at work. "As an alternative reasonable accommodation," which she was granted an ergonomic sit and stand desk and chair and LWOP "when medically necessary without medical documentation." Id. at 6. Such reasonable accommodations are granted where they "[do] not create an organizational hardship or remove essential functions of the employee['s] position." Id. But this use of LWOP "was not whole-heartedly accepted by the Plaintiff's first- and second- line supervisors," she alleges. Id.

By 2020-2022, Brandon was under the supervision of two second-line supervisors who, she alleges, "worked as a tag team to remove" Brandon's reasonable accommodation of LWOP when medically necessary. They claimed that Brandon was not fulfilling the essential functions of her position, which Brandon alleges is contrary to her annual performance evaluations. Id. She alleges that these supervisors "went…to some other random Personnel office within the Veterans Health Administration claiming they had the authority to rescind the LWOP reasonable accommodation," which she alleges and a breach of the confidentiality of her medical records. Id. The also alleges that this was made in retaliation for her having sought the reasonable accommodation in the first place. Id. at 12.

Brandon alleges that the Agency "began tampering" with calculations of Brandon's available FMLA, ignoring Brandon's requests to correct any miscalculations for months. Id. at 7. "[A]nd then the FMLA tracking system was inoperable and FMLA had to be manually tracked by supervisors[,]" and the Agency was slow to respond to Brandon's requests to

correct any miscalculations. Id. at 6-7. Brandon's complaints to the Office of Accountability and Whistleblower Protection on this issue were "returned for inner agency investigation." Id. at 7.

Brandon alleges that her work environment became "so hostile, and the managers so egregious" that she filed for disability retirement in March 2022. Id. She alleges that the Agency refused to cooperate, "withheld the package and refused to complete the required Standard From 3112D". Id.

Pursuant to an EEOC Settlement Agreement between Brandon and the Agency, the Agency rescinded Brandon's 2018 suspension and granted her backpay. Brandon was paid a lump sum settlement and was placed on Administrative Leave for ten days, then placed on LWOP until the Office of Personnel Management (OPM) made a decision on Brandon's application for disability retirement. ECF No. 18-19 at 1-2; Amp. Compl. at 8. The Agency agreed not to oppose Brandon's application for disability retirement and to take all actions necessary to advance her application, including completing Form 3112D. Id. at 7; ECF No. 18-19 at 2.

OPM received Brandon's retirement request in July 2022. Am Compl. at 7.

While Brandon was on LWOP pending her retirement approval in December 2022, the Agency "fraudulently created a time card" saying she worked for 80 hours in a pay period. Id. at 8. The Agency submitted a "fraudulent corrected timecard" to the EEOC, arguing that the timekeeper at the Agency made a mistake. Id. Brandon argues that it is "inconceivable to believe" that the persons entering her timesheet at the time made this error accidentally, because they would see an "ERROR VALIDATION MESSAGE" and "other notations from

other management officials." Id. She also alleges that the Deputy Area Manager who entered this "fraudulent" time sheet also "manipulated the payroll time and attendance" of Brandon's September timesheet to deny her leave without pay. Id. at 8-9.

Brandon alleges that the December "fraudulent[] … time card" was an adverse employment action causally connected to a June 10, 2022 settlement agreement. Id. at 9. The Agency's "deliberate" misrepresentation of her hours "created an artificial perception that [Brandon] was in pay status" and was not corrected until mid-January 2023. This altered the amount of Brandon's lump sum payments and her back pay via the settlement agreement. Id. at 9-10.

Brandon alleges that she was retaliated against for "engaging in the EEO protected activity of requesting a reasonable accommodation" through the actions of "management of March 2020" consulting "personnel outside of the Plaintiff's structural organization" and improperly releasing her confidential medical information. Id. at 11-12. The "abusive, intimidating, and offensive work environment conditions … only exacerbated her already existing disabling condition(s) which constitutes as severe forms of disability harassment and discrimination under Section 501 of the Rehabilitation Act of 1973." Id. at 12.

Brandon seeks a jury trial and "Punitive, Monetary/Compensatory Damages in the amount of $10,000,000" for "12 years of emotional and physical distress/pain" while employed at the OCC in Salem. Id. at 13.

## PROCEDURAL BACKGROUND

Plaintiff Yvette Brandon filed her complaint before this court on February 10, 2025, alleging disability discrimination and retaliation claims from her time as a Voucher Examiner

at the Department of Veterans Affairs. ECF No. 1. By answer, defendant Doug Collins filed a Motion to Dismiss. ECF No. 5. Roseboro notice was provided to Brandon, ECF No. 7, and she filed responsive briefing on July 8, 2025. ECF No. 8. Defendants filed a reply on July 15, 2025. ECF No. 9. This court referred the matter to Magistrate Judge C. Kailani Memmer on July 17, 2025. ECF No. 10. Brandon later filed a supplemental response to the motion to dismiss. ECF No. 11.

The magistrate judge filed her report & recommendation (R&R) on November 4, 2025, recommending that the court grant the first motion to dismiss. ECF No. 13. Brandon filed her objection to the magistrate judge's report and recommendations on November 20, 2025, ECF No. 14, on which the parties briefed the court. ECF Nos. 15, 16. The court, finding no specified objection to the R&R and no clear error with its analysis, adopted the R&R in its entirety. ECF No. 17. The court granted Brandon leave to amend her complaint. Id.

Brandon filed an amended complaint on April 10, 2026. ECF No. 18. Defendant Collins filed second a motion to dismiss for failure to state a claim on April 24, 2026. ECF No. 19. Roseboro notice was sent to Brandon. ECF No. 21. The parties have briefed the court on the second motion. ECF Nos. 20, 22-24. No party has requested a hearing, and the court finds that hearing would not aid in the decisional process. The motion is ripe for review.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In evaluating a motion to dismiss under Rule 12(b)(6), a court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). In considering a motion to dismiss, the "court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011). "The court 'may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic.'" Lopez v. Noem, No. 2:25-CV-764, 2026 WL 567653, at *2 (E.D. Va. Feb. 12, 2026), report and recommendation adopted, No. 2:25-CV-764, 2026 WL 565806 (E.D. Va. Feb. 27, 2026)(quoting Kensington Volunteer Fire Dep't. Inc. v. Montgomery Cnty., 684 F.3d 462, 467 (4th Cir. 2012)).

When a complaint is filed by a pro se litigant, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

"If a pro se complaint contains a potentially cognizable claim, the plaintiff should be afforded an opportunity to particularize his allegations." Pulley v. Zoley, No. 1:23CV846 (RDA/JFA), 2024 WL 4844789, at *3 (E.D. Va. Nov. 20, 2024)(summarizing Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)). Yet, where the district court finds that a civil action fails to state a claim, and where a plaintiff has been offered an opportunity to amend their complaint, "the district court has the discretion to afford the plaintiff another opportunity to amend, or it can dismiss the complaint with prejudice." Pulley, 2024 WL 4844789, at *3 n.4 (quoting United States ex rel. Angel v. Scott, 697 F. Supp.3d 483, 494-95 (E.D. Va. 2023)).

## DISCUSSION

Construing Brandon's amended complaint liberally, she asserts a disability discrimination claim under the Rehabilitation Act of 1973, a retaliation claim under the same, and claims of a hostile work environment.

### I. Disability Discrimination

Brandon raises a disability discrimination claim under the Rehabilitation Act, which is "the exclusive means" by which a plaintiff may raise a disability claim against a federal agency. Brown v. Henderson, 6 Fed. App'x 155, 156 (4th Cir. 2001)(quoting Spence v. Straw, 54 F.3d 196, 197 (3d Cir. 1995)). Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

Brandon's amended complaint alleges two separate instances of discrimination and retaliation. The first was in 2020-2022, when agency officials sought to remove her reasonable

accommodation of LWOP. Am. Compl. at 6. The second is in 2022, when, after a settlement agreement had been reached and Brandon was on leave without pay pending the approval of her disability retirement, an Agency official entered an the erroneous (and allegedly fraudulent) timecard reflecting that Brandon had worked for 80 hours. Id. at 7-8.

Such claims are reviewed under the McDonnell Douglas burden-shifting framework. Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006). "Under that framework, [the plaintiff] has the initial burden of establishing a prima facie case of discrimination." Hannah P. v. Coats, 916 F.3d 327, 342 (4th Cir. 2019)(citing Perry v. Comput. Scis. Corp., 429 F. App'x 218, 219-20 (4th Cir. 2011)). "To establish this prima facie case, [a plaintiff] must show that: (1) she is disabled; (2) she was otherwise qualified for the position; and (3) she suffered an adverse employment action solely on the basis of her disability." Id.; see also 29 U.S.C. § 794(a).[1]

**A. Disability**

Brandon sufficiently alleges that she has a disability. Am. Compl. at 3-4. "An individual is disabled under the ADA or the Rehabilitation Act if he or she: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Davis v. Univ. of N. Carolina, 263 F.3d 95, 99 (4th Cir. 2001)(citing 42 U.S.C. § 12102(2); 29 U.S.C. § 705(20)(B)). Brandon's allegations that she suffers from "chronic medical conditions," including "Lupus Erythematosus, Nephrotic Syndrome, Peripheral Neuropathy, Graves'

---

[1] "To the extent possible, we construe the ADA and Rehabilitation Act to impose similar requirements." Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012). "The two statutes differ only with respect to the third element, causation. To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion." Id. at 461-462 (citing Baird ex rel. Baird v. Rose, 192 F.3d 462, 468–69 (4th Cir.1999)).

Disease, Pulmonary Emphysema, Asthma, Postoperative Hypothyroidism, Hypertension, Mixed Hyperlipidemia, Left knee Arthritis, Anxiety and Depression," the allegation that she is currently is on disability retirement, and that she has a compensable service-connected disability rating of at least 30% sufficiently allege that she has a disability under the statute. Am. Compl. at 3-4, 9.

**B. "Otherwise Qualified"**

However, reading Brandon's amended complaint liberally, she does not sufficiently allege that (2) she was otherwise qualified for the position. A "qualified individual" is '"an individual with a disability who, with or without reasonable accommodation, can perform the essential functions' of his job." Mason v. Wyeth, Inc., 183 F. App'x 353, 358 (4th Cir. 2006)(quoting Fox v. General Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001)); see also 42 U.S.C. § 12111(8). "An 'otherwise qualified' employee 'must be able to perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue' with reasonable accommodation." Bluey v. Charles Cnty., Md., No. CIV DKC 19-3163, 2020 WL 5203334, at *6 (D. Md. Sept. 1, 2020)(quoting Nanette v. Snow, 343 F. Supp. 2d 465, 473 (D. Md. Oct. 29, 2004)). A plaintiff must allege facts to support a finding that they were "otherwise qualified" at the time of the adverse decision:

> "[A] complaint asserting discrimination under the ADA must provide some allegation or allegations specifically indicating that the plaintiff is qualified to perform the essential functions of the job with or without reasonable accommodation." E.E.O.C. v. Supervalu, Inc., 674 F.Supp.2d 1007, 1012 (N.D.Ill.2009). "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires," but "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). "A job function may be essential for various reasons, including the fact that the position

> exists to perform that function, the existence of a limited number of employees available among whom that job function can be distributed, and the fact that the employee was hired for her expertise in that particular function." Blackburn v. Trustees of Guilford Tech. Cmty. Coll., 733 F.Supp.2d 659, 664 (M.D.N.C. 2010). "A plaintiff must show that he can perform the essential functions of the job at the time of the employment decision or in the immediate future." Lamb v. Qualex, Inc., 33 F. App'x. 49, 57 (4thCir.2002)(unpublished).

Harris v. Hous. Auth. of Balt. City, No. CIV. WDQ-14-3395, 2015 WL 5083502, at *6 (D. Md. Aug. 26, 2015).

Courts vary on whether they require a plaintiff to allege exactly what the essential functions are for a particular position in order for their claim to survive a motion to dismiss. But they have consistently held that to state a claim, a plaintiff needs to allege that they can perform the essential functions of the job. Webb v. Chesterfield Cnty., Va., No. 3:19-CV-00183-JAG, 2019 WL 2992011, at *2 (E.D. Va. July 8, 2019)(collecting cases).

Brandon alleges that she worked as a "Voucher Examiner, GS-6 for the Office of Community Care ("OCC") at the Salem VA Medical Center in Salem, Virginia." Am. Compl. at 2. She alleges that in 2018 she was offered reasonable accommodation of "an ergonomic sit and stand desk, chair and LWOP when medically necessary without medical documentation." Id. at 6. Such requests are granted where they "[do] not create an organizational hardship or remove essential functions of the employees' position." Id. Reading Brandon's amended complaint liberally, this raises the reasonable inference that the Agency had determined she was qualified to perform the essential functions of her position at that time, in 2018. However, she also alleges that her LWOP accommodation was removed because "managers claimed

[she] was not fulfilling the essential functions of her position, which is in contrast to her annual performance evaluations." Id.[2]

Nowhere in the amended complaint does Brandon specifically allege the facts about the essential functions of her position, or that she was otherwise qualified to perform them at the time of the alleged adverse actions in either 2020 or 2022. Indeed, as to the 2022 allegation, she alleges that, pursuant to her settlement agreement with the Agency, she was on LWOP pending approval of her application for disability retirement. This allegation implies that she was unable to perform the essential functions of her job, with or without reasonable accommodations, at that time. This is insufficient to state a claim under the statute. Compare Harris, 2015 WL 5083502, at *7 (finding that a plaintiff alleging their job title but not "the responsibilities of his position, its essential functions, or how he could fulfill those functions with reasonable accommodations at the time of his termination … has not alleged that he is a qualified individual under the ADA or Rehabilitation Act."); Webb, 2019 WL 2992011, at *2 (denying a motion to dismiss where a firefighter alleged that "he has worked as a

[2] Brandon has filed over 100 pages of exhibits to her amended complaint. Some of these exhibits include various filings related to her reasonable accommodations requests over the years and EEO Complaint that Brandon filed relating to them. In her briefing, Brandon argues that she "has submitted factual documents that contain enough facts to support" her claims. ECF No. 22 at 10. The court makes reasonable inferences based on the allegations Brandon makes in her amended complaint and exhibits, but is not obligated to sift through the entirety of the exhibits to see if the elements of her claims may be buried therein. "[W]hile some liberality is allowed in construing pro se complaints, even a pro se litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." Carmel v. CSH & C, 32 F. Supp. 3d 434, 436 (W.D.N.Y. 2014). See also Akerman v. Austin, No. 122CV696LMBWEF, 2022 WL 16700382, at *12 (E.D. Va. Nov. 3, 2022), aff'd, No. 22-2066, 2023 WL 5561258 (4th Cir. Aug. 29, 2023)("Even though plaintiff is proceeding pro se, it is not this Court's duty to sift through the mass of his "Roseboro" filings to determine whether he has alleged a cognizable claim for relief or whether he has cured the deficiencies that defendants' Motion to Dismiss identified in the Amended Complaint."). "The 'special judicial solicitude' with which a district court should view ... pro se complaints does not transform the court into an advocate." Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

firefighter…since 2003"; "he continued to perform his duties when he began suffering from PTSD"; and he continued working without incident and without accommodation, because this "sufficiently alleges that he can perform [the] essential functions" of his position even though he did not list out those essential functions in his complaint).

### C. Adverse Action Soley on the Basis of Disability

Third, even if Brandon had sufficiently alleged that she was otherwise qualified, she has not sufficiently alleged there was an adverse action taken solely on the basis of her disability. "[A] plaintiff seeking relief under … the Rehabilitation Act must prove that the defendants' discriminatory conduct was 'solely by reason' of the plaintiff's disability." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 n. 17 (4th Cir. 2005). At the motion to dismiss stage, the burden is not as high – "a plaintiff need only allege facts plausibly demonstrating that she may have been dismissed 'solely by reason of her ... disability,' rather than provide definitive proof." Evans v. McDonough, No. 1:23-CV-8, 2024 WL 449569, at *6 (M.D.N.C. Feb. 6, 2024)(quoting Constantine, 411 F.3d at 498 n. 17).

#### 1. Adverse Action

Brandon sufficiently alleges that there has been an adverse action. Brandon alleges that the Agency's "fraudulent" time card that paid her for 80 hours of work while she was on administrative LWOP is an adverse action. Am. Compl. at 7-10 (describing the adverse employment action). "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Roberts v. Glenn Indus. Group, Inc., 998 F.3d 111, 122-123 (4th Cir. 2021)(quoting Chang Lim v. Azar, 310 F. Supp. 3d 588, 601 (D. Md. 2018)). See also 42 U.S.C. § 12112(a) (the Rehabilitation Act

prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . other terms, conditions, and privileges of employment.") Brandon alleges that the misclassification of her hours in December 2022 "caused a discrepancy or offset in the initial lump sum payment and an off-set of the Plaintiff's deductions per LES (Leave and Earn Statements) for the 'back pay' per the settlement agreement." Am. Compl. at 9. The Agency's correction of its mistake "3 pay periods later … left the Plaintiff in debt to the federal government" and deprived her of the "full benefit of the 'settlement agreement.'" Id. at 10. As alleged, this disrupted the benefits of Brandon's employment.

As a separate adverse action, Brandon alleges that her supervisors proposed the removal of LWOP as a of one of the reasonable accommodations for Brandon's disabilities. Am. Compl. at 12 The ability to take leave without pay as medically necessary relates to the terms, conditions, or benefits of the plaintiff's employment, and the removal of such a term could amount to an adverse action under the statute. See, c.f. Ponton v. Newport News Sch. Bd., 632 F. Supp. 1056, 1064 (E.D. Va. 1986) ("The leave of absence that plaintiff was forced to take clearly affected the 'terms, conditions, or privileges' of her employment."); Crawford v. Prince George's Cnty. Bd. of Educ., No. CV JKB-20-00048, 2023 WL 2600363, at *6 (D. Md. Mar. 21, 2023), aff'd, No. 23-1430, 2023 WL 6421010 (4th Cir. Oct. 2, 2023)(finding that a claim of racially disparate treatment based on the denial of certain leave requests did not constitute adverse employment actions where it did not alter any terms, conditions or benefits of employment). The court finds the amended complaint alleges facts supporting a reasonable inference that this action was adverse to Brandon.

### 2. "Sole Basis"

However, Brandon does not allege that her disability was the "sole basis" for either alleged discriminatory action. She alleges that the denial of her LWOP accommodation, in part, because she "engaged in the EEO protected activity of requesting a reasonable accommodation." Am. Compl. at 12. Brandon explicitly alleges that the action was made for reasons other than her disability (i.e., retaliation). This fails to plausibly state a claim that the denial of her LWOP was made "solely by reason of her disability." See Boldin v. Wingfield, No. 6:10CV00010, 2010 WL 3766325, at *3 (W.D. Va. Sept. 16, 2010) (emphasis added), aff'd, 403 F. App'x 830 (4th Cir. 2010)(granting a motion to dismiss of a Section 504 disability discrimination claim because the plaintiff alleged improper treatment both because of her race and because of complaints she made to defendants—thus failing to state a claim of discrimination "solely by reason of … handicap").

Brandon's discrimination claim based on the allegations that the erroneous December 2022 timecards amounted to "retaliation and disability discrimination," Am. Compl. at 9, fails to state a claim for the same reason.

The amended complaint insufficiently alleges facts to support two of the elements of a discrimination claim under the Rehabilitation act. The court thereby **DISMISSES** Brandon's disability discrimination claims. As Brandon has already been afforded an opportunity to reallege her claims, this dismissal is with prejudice.

## II. Retaliation

Brandon alleges that she was retaliated against for pursuing an EEO claim. She alleges that the Agency's proposed removal of leave without pay as a reasonable accommodation was made in retaliation against her "because [she] engaged in the EEO protected activity of

requesting a reasonable accommodation." Am. Compl. at 12. She also alleges that her timecard was fraudulently altered in December 2022 to reflect that she was in "pay status" at the time, "thus impeding [her] initial first 'lumpsum' back payment." Id. at 8.

"The Rehabilitation Act bars retaliation 'against any individual because such individual has opposed any act or practice made unlawful by [the ADA or the Rehabilitation Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA or Rehabilitation Act].'" Merrill v. McCarthy, 184 F. Supp. 3d 221, 240–41 (E.D.N.C. 2016)(citing 42 U.S.C. § 12203(a); 29 U.S.C. 791(f)(incorporating ADA standards); Hooven-Lewis v. Caldera, 249 F.3d 259, 272 (4th Cir. 2001)(the Rehabilitation Act incorporates the anti-retaliation provision of the ADA)).

**A. Direct Evidence**

"'[T]o prevail on a claim of retaliation [under the Rehabilitation Act], a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method.'" Smith v. CSRA, 12 F.4th 396, 416 (4th Cir. 2021)(quoting Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 577 (4th Cir. 2015); Rhoads v. FDIC, 257 F.3d 373, 391 (4th Cir. 2001)).

"Under the former avenue, a plaintiff must produce direct or indirect evidence of a stated purpose to discriminate ... of sufficient probative force to reflect a genuine issue of material fact. … What is required is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Lewis v. Gibson, 621 F. App'x 163, 165 (4th Cir. 2015)(citation modified)(quoting

Rhoads, 257 F.3d at 391-92; Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999)).[3]

Brandon alleges that her claim fits under the first part of this test, pointing to several factual allegations as direct evidence of retaliation. For one, she alleges that the inaccurate time card, which "caused a discrepancy or offset in the initial lump sum payment and an off-set of the Plaintiff's deductions … for the 'back pay' per the settlement agreement…presents 'direct'

[3] In her amended complaint, Brandon cites heavily to the Eighth Circuit's discussion of "direct" vs. "circumstantial" evidence in Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011). See Am. Compl. at 10, ("Thus, 'direct' refers to the causal strength of the proof."), 11 (same). In relevant part, Torgerson involved disparate treatment claims under Title VII and the Minnesota Human Rights Act, in which the plaintiffs alleged discrimination on the base of sex and national origin. The passage that Brandon cites to is a direct quote from the Eighth Circuit's decision in Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004):

> We have long recognized and followed this principle in applying McDonnell Douglas [Corp. v. Green, 411 U.S. 792, 802–03 (1973)] by holding that a plaintiff may survive the defendant's motion for summary judgment in one of two ways. The first is by proof of "direct evidence" of discrimination. Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir.1997). Thus, "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part McDonnell Douglas analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the McDonnell Douglas analysis, including sufficient evidence of pretext. See, e.g., Harvey v. Anheuser–Busch, Inc., 38 F.3d 968, 971(8th Cir.1994).

Torgerson, 643 F.3d at 1043–44 (quoting Griffith, 387 F.3d at 736).

The court also notes that here, at the motion to dismiss stage, it is not necessary that Brandon establish direct evidence, merely that she allege facts to support a reasonable inference of discriminatory purpose.

Also on the point of "direct evidence," Brandon repeatedly cites to U.S. v. Lichenstein, 610 F.2d 1272 (5th Cir. 1980). See Am. Compl. at 10-11 (citing Lichenstein for the idea that "evidence clearly points to the presence of an illegal motive/action."). The court has also reviewed this case in an effort to liberally construe Brandon's claims. It is a Fifth Circuit criminal conspiracy case, and the "direct evidence" in that case consisted of admissions by the defendants about the details of their conspiracy. The court sees no similar factual allegations of direct evidence in the amended complaint.

evidence of retaliation and disability discrimination." Am. Compl. at 9. Two, she cites to the fact that "[t]he Agency went outside the established chain of command to deny" her use of LWOP as a reasonable accommodation is also "'Direct Evidence' of disability/retaliation that 'shows a discriminatory animus and the adverse employment action." Id. at 11. This procedural violation is evidence of discriminatory purpose, she argues. Id. Three, Brandon argues that the Agency's "proposed removal" of her reasonable accommodation (LWOP) was retaliation for Brandon's choice to engage "in the EEO protected activity of requesting a reasonable accommodation." Id. at 12. And four, Brandon argues that the March 2020 confidentiality breach that occurred when her management consulted personnel outside of her structural organization was an adverse action taken in retaliation of her choice to pursue her EEO rights. Id. Together, these "abusive, intimidating and offensive work environment conditions … exacerbated her already existing disabling condition(s) which constitutes as severe forms of disability harassment and discrimination under Section 501." Id.

These conclusory allegations do not allege facts supporting "a stated purpose to discriminate" or reflect a "discriminatory attitude" bearing directly on the contested employment decision. Lewis, 621 F. App'x at 165. Beyond conclusorily alleging that her supervisors did not "whole-heartedly accep[t]" her reasonable accommodation of LWOP, Am. Compl. at 5-6, the allegations in the amended complaint do not address discriminatory animus at all. There are no facts alleging "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Torgerson, 643 F.3d at 1044 (citation modified).

In the court's view, these factual allegations do not support an inference of direct retaliation. Compare Benjamin v. Sparks, No. 4:14-CV-186-D, 2018 WL 11608237, at *14 (E.D.N.C. Oct. 29, 2018), aff'd, 986 F.3d 332 (4th Cir. 2021)(reasoning that evidence of a supervisor explaining that "he had to terminate [plaintiff] because [plaintiff] had dementia and bipolar disease" amounted to "direct evidence of disability discrimination by a decisionmaker on the basis of [plaintiff]'s perceived mental impairment."). See also Mooberry v. Charleston S. Univ., No. CV22000769RMGMGB, 2021 WL 5911333, at *5 (D.S.C. Nov. 4, 2021), report and recommendation adopted, No. 2:20-CV-00769, 2022 WL 123005 (D.S.C. Jan. 13, 2022)(finding that "Plaintiff has not presented direct evidence of discrimination" where the gender-related statements presented did not reflect a discriminatory attitude bearing on a decision not to renew plaintiff's employment contract).

**B. Prima Facie Case**

"In the absence of direct evidence of retaliation," a plaintiff may "pursu[e] her retaliation claim via the application of the McDonnell Douglas burden shifting framework." Smith, 12 F.4th at 416. Under the burden-shifting framework, "a plaintiff must show '(1) they engaged in a protected activity; (2) their employer acted adversely against them; and (3) their protected activity was causally connected to their employer's adverse action.'" Kelley v. Mayorkas, 694 F. Supp. 3d 715, 723–24 (E.D. Va. 2023)(quoting Smith, 12 F.4th at 416)(citation modified).

**1. Protected Activity**

Brandon alleges that she (1) engaged in a protected activity. Am. Compl. at 12 She alleges that she requested reasonable accommodations in 2018, Id. at 5-6, 12 ("Plaintiff

engaged in the EEO protected activity of requesting a reasonable accommodation."), and that she asserted her rights before the EEOC, resulting in a Settlement Agreement, Id. at 7-8. The parties do not dispute that this was protected activity.

**2. Adverse Action**

As described infra, Brandon alleges two separate adverse actions in her amended complaint. Generally, Brandon alleges that she "has suffered adverse retaliatory actions, harassment and disability discrimination to include denial of reasonable accommodations." Am. Compl. at 4. One "adverse employment action" she describes is that an "Agency certifying management official … deliberately moved Plaintiff after 5 months in non-pay status to pay-status … to pay Plaintiff 80 hours of pay which also impeded how OPM calculated the Plaintiff's initial first lumpsum back pay . . . ." Id. at 9-10. The other is that "two second line supervisor(s) … worked 'interchangeably together' … as a tag team to remove [the previously-]granted LWOP reasonable accommodation when medical (sic) necessary (2018)." Id. at 6. "[T]he proposed removal (but rescinded during 'Ordered' mediation) following the denial of the Plaintiff's reasonable accommodation LWOP without medical documentation that internal officials supported, is considered retaliation because the Plaintiff engaged in the EEO protected activity of requesting a reasonable accommodation." Id. at 12.

As explained supra, the court finds that each of these alleged adverse actions involve the terms and conditions of employment, which is required for a discrimination claim under the Rehabilitation Act. In a retaliation claim, the alleged adverse actions may "include a wider variety of conduct within its scope," including actions that are "materially adverse." Herkert v. Bisignano, 151 F.4th 157, 165 (4th Cir. 2025)) (quoting Laurent-Workman v. Wormuth, 54

F. 4th 201, 213 (4th Cir. 2022)). To allege adverse action, "the employee must demonstrate that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Kelley, 694 F. Supp. at 723-24 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). As pled, this plausibly posed a material disadvantage to Brandon. The questions of whether Brandon was truly disadvantaged by the timesheet, and whether such a disadvantage would truly dissuade a reasonable worker from making a charge of discrimination, would be issues of fact for a later stage of litigation. Notwithstanding this issue of fact, because the court has found that the amended complaint sufficiently alleges adverse actions for purposes of Brandon's discrimination claim (i.e., that the adverse actions impacted the terms, conditions, or benefits of her employment), it follows that she has sufficiently alleged that those actions are adverse for purposes of her retaliation claim.

**3. Causal Connection**

However, Brandon does not sufficiently allege (3) a causal connection between her EEO activity and these two separate acts. "[E]stablishing a 'causal relationship' at the prima facie stage is not an onerous burden." Smith, 12 F.4th at 417 (quoting Strothers v. City of Laurel, 895 F.3d 317, 335 (4th Cir. 2018)). The third element of a retaliation claim requires a plaintiff to allege that her employer "took the adverse action because of the protected activity." Roberts, 998 F.3d at 123 (quoting Bryant v. Aiken Regional Med. Ctrs., Inc., 333 F.3d 536, 543 (4th Cir. 2003)). There are two ways that a plaintiff may demonstrate causation. First, they may "establish the existence of facts that 'suggest[] that the adverse [employment] act[ion]

occurred because of the protected activity." Id. (quoting Johnson v. United Parcel Serv., Inc., 839 Fed. App'x 781, 783-84 (4th Cir. 2021)). Second, they may "establish that 'the adverse act bears sufficient temporal proximity to the protected activity.'" Id. (quoting Johnson at 784-84). A mix of the two may also suffice. Id. Either way, "[t]he Fourth Circuit has made clear that to establish a causal relationship between the protected activity and the adverse action, 'a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred.'" Jennings v. Frostburg State Univ., 679 F. Supp. 3d 240, 281 (D. Md. 2023)(quoting Roberts, 998 F.3d at 124).

The court first addresses Brandon's causal arguments with respect to the December 2022 timesheets. Brandon alleges that the actions of "[t]he Agency's management official who deliberately moved [Brandon] from non-pay to pay status'" led to "the artificial perception that Plaintiff was in pay status." Am. Compl. at 9.

In the amended complaint, Brandon specifically alleges a causal connection between the erroneous time card and an impact on her initial lump sum payment in retirement. Am. Compl. at 9-10. But, as would be necessary to state a claim, she does not allege a causal connection between her EEO actions and the "deliberat[e]" move from non-pay to pay status for two weeks in December 2022, beyond allegations that the erroneous timesheet was deliberately falsified and it was "inconceivable" that the timekeeper could make that mistake. Id.[4] Brandon alleges that this error was corrected the next month, on January 17, 2023. Id. at

[4] The court notes that the exhibits relied on in the amended complaint contradict this alleged version of events. Compare Am. Compl. at 8 (arguing it was "inconceivable to believe that the (Deputy Area Manager) who certified Pay Period: 25-2022 December 4-17, 2022 did not see the ERROR VALIDATION MESSAGE but other notations from other management officials. Especially when this same (Deputy Area Manager) for Pay Period: 19 – 2022 September 11-24 manipulated the payroll time and attendance to **DENY** "KA-LWOP" on 9/19; 9/20; 9/21; 9/22; and 9.23 ERROR VALIDATION MESSAGE – the same 'certifying timekeeper for

18. This does not amount to an allegation that the particular decision maker was aware of her EEO complaint, of the terms of her Settlement Agreement, or even that they were aware that accidentally placing Brandon on "pay status" for two weeks in December 2022 could be an adverse action. In other words, this does not allege that the erroneous ("fraudulent") timesheet was entered because of the settlement agreement. In the court's view, this is insufficient to plausibly allege causation for a retaliation claim.

Still, Brandon argues that the "causal connection can be established by showing that the adverse employment action followed within a 5-month time lapse." Am. Compl. at 9. "While there is not a bright-line rule instructing when temporal proximity is sufficient to establish causation, without other evidence of causation, the gap between the protected activity and the adverse employment action can generally be no longer than two months." Barnhill v. Bondi, 138 F.4th 123, 132 (4th Cir. 2025)(citing Roberts, 998 F.3d at 127). In the Fourth Circuit, the time lapse Brandon alleges is insufficient to establish causation. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)); Hollis v. Morgan State Univ., 153 F.4th 369, 384 (4th Cir. 2025)(inferring causation from a three-month period between protected activity and adverse action); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (inferring causation from four-

pay period (25) but a different validating timekeeper."); ECF No. 18-27 (arguing that the Deputy Area Manager who certified the erroneous timecard was filling in for the Area Manager who was on leave and was handling over 60 timesheets).

month gap). In the absence of other causal allegations, the court finds this time gap insufficiently close to establish causation.

Second, the amended complaint does not allege a causal connection between Brandon's previous EEO complaints and the other adverse action alleged, i.e., her supervisors' efforts in 2020-2022 to revise her accommodations to remove LWOP. She argues that the proposed removal of the accommodation "is considered retaliation because the Plaintiff engaged in the EEO protected activity of requesting a reasonable accommodation." Am. Compl. at 12.

Here, too, the temporal proximity is not sufficiently close to establish a causal connection. Brandon alleges that she engaged in EEO activity, requesting reassignment of her position and alternative reasonable accommodations in 2018 while on a 14-day suspension. Am. Compl. at 6. She was granted LWOP as a reasonable accommodation then. But the alleged retaliation, the removal of LWOP as an accommodation, happened in "[t]he following years 2020-2022." Id. at 6. This two-year gap is too large to imply a causal connection on its own.

As to causation, Brandon alleges that "[t]he Agency went outside the established chain of command to deny the 'reasonable accommodation' LWOP without medical documentation after the Plaintiff's internal experts supported it and violated federal sector Equal Employment Opportunity (EEO) laws and agency-specific procedures." Am. Compl. at 11. "The Agency's efforts even went outside of the Plaintiff's assigned Human Resource/Personnel Office (Topeka, KS) to some other random Personnel office within the Veterans Health Administration claiming they had the authority to rescind the LWOP reasonable

accommodation which was a breach of the Plaintiff's medical records." Id.at 6. This "improper process" serves as evidence of causation, she argues. Id. at 11.

Brandon alleges no further facts about agency-specific procedures that may have been violated, the "internal experts" who supported the continuation of LWOP as a reasonable accommodation, or any further facts to support causation. In the view of the court, this allegation of procedural irregularity is insufficient on its own to raise a reasonable inference that the removal of leave without pay as an accommodation was done in retaliation for having sought those accommodations in the first place. If anything, the allegations in the complaint raise the reasonable inference that the Agency considered removing the accommodation for its own stated nondiscriminatory reasons. See Am. Compl. at 6 (arguing that management officials "claimed that the Plaintiff was not fulfilling the essential functions of her position,")(citing ECF No. 18-13 (April 2021 emails indicating that Brandon's "prior RA approvals that mentioned LWOP were revisited in February 2020," that Brandon was "advised at that time that due to the amount of LWOP [she was using, she was] not performing the essential functions of [her] job position," and that she was being offered alternative accommodations so that she could continue to do the essential functions of her position that she ultimately denied).

Because Brandon does not sufficiently allege a causal connection between her protected activity and the allegedly adverse actions, her retaliation claim is **DISMISSED**. Again, as Brandon has already been afforded an opportunity to reallege cognizable claims, this dismissal is with prejudice.

### III. Hostile Work Environment

Last, in her amended complaint, Brandon raises allegations that "the work environment has become so hostile, and the managers so egregious that the Plaintiff decided to file for disability retirement[.]" Am. Compl. at 7. A liberal construction of Brandon's amended complaint finds that it does not state a claim for a hostile work environment.

In her amended complaint, Brandon alleges that after her supervisors rescinded her reasonable accommodation of LWOP, "the Agency began tampering with how the Plaintiff's FMLA was calculated often to mis calculation (sic) upon its renewal date; and then the FMLA tracking system was inoperable and FMLA had to be manually tracked by supervisors. The agency ignored the Plaintiff's request to correct the miscalculations for months." Id. at 6-7. "Eventually the Plaintiff filed a complaint with the United States Department of Veterans Affairs, Office of Accountability and Whistleblower Protection, DC to no avail – only to be returned for inner agency investigation." Id. at 7. This administrative environment "be[came] so hostile, the managers so egregious, that the Plaintiff decided to file for disability retirement … ." Id.

Additionally, Brandon alleges that the proposed removal of LWOP and the fact that her supervisors in 2020 "consulted personnel outside of the Plaintiff's structural organization involves the improper release of confidential medical information," she was exposed to "abusive, intimidating and offensive work environment conditions" which "exacerbated her already existing disabling condition(s)" and "constitutes as severe forms of disability harassment and discrimination." Id. at 12.

In short, Brandon alleges that the continual issues with counting FMLA and LWOP in the system, as well as the potentially improper release of confidential medical information within the agency, created a hostile work environment.

To prove a claim of a hostile work environment, a plaintiff must show: "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected class]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015). "Courts analyze hostile work environment claims under an objective standard, meaning the environment 'would reasonably be perceived as hostile, and is perceived, as hostile or abusive ... by looking at all the circumstances.'" Stewart v. Hegseth, 800 F. Supp. 3d 662, 672 (W.D. Va. 2025)(quoting E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008)). "The Fourth Circuit uses this framework to analyze hostile work environment claims under both Title VII and the Rehab Act." Stewart, 800 F. Supp. 3d at 672 (citing Pueschel v. Peters, 577 F.3d 558, 560, 564-65 (4th Cir. 2009)). At the motion to dismiss stage, a plaintiff is required to allege facts to allow the court to draw a reasonable inference that these elements have been met.

In the court's view, the facts alleged in the amended do not support a hostile work environment claim. Beyond conclusory allegations of "tampering" and mismanagement, Brandon's allegations of FMLA miscalculation do not allege that the FMLA miscalculations were (2) based on her disability, nor that they (3) altered her conditions of work or would reasonably be perceived as hostile or abusive. And, without more information, the court does the court find it plausible that the alleged internal disclosure of Brandon's disabilities to

internal staff at the Agency in discussions of her reasonable accommodations somehow exacerbated her disabling conditions.[5] As alleged, this does not state a claim that is plausible on its face. Brandon's hostile work environment claim is **DISMISSED.**

## CONCLUSION

For the reasons stated herein, defendant Doug Collins's second motion to dismiss, ECF No. 19, is **GRANTED**. Plaintiff Yvette C. Brandon's amended complaint, ECF No. 18, is **DISMISSESD** with prejudice. This case is now **CLOSED**.

It is **SO ORDERED**.

The clerk is directed to send a copy of this order to the pro se plaintiff and to all counsel of record.

Entered: September 10, 2026



Michael F. Urbanski
U.S. District Judge
2026.09.10 12:01:01
-04'00'

Michael F. Urbanski
Senior United States District Judge

[5] In their memorandum in support of the motion to dismiss, defendant argues that "Brandon was required to follow and exhaust the Title VII administrative remedies before filing this suit." ECF No. 20 at 8 (citing Spencer v. Ashcroft, 147 F. App'x 373, 375 (4th Cir. 2005); Stores v. Brennan, 2016 WL 4939362, at *2 (W.D. Va. Sept. 14, 2016); Jordan v. Brennan, 2019 WL 1748547, at *3 (W.D. Va. Apr. 18, 2019))). In Spencer, the Fourth Circuit held that a plaintiff alleging constructive discharge under Rehabilitation Act "was required to exhaust her administrative remedies before instituting a lawsuit." Spencer, 147 Fed. App'x at *2 (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 829-32 (1976)). Because the court dismisses this claim on other grounds, it need not address whether Brandon has administratively exhausted this claim.